## STATE v. CHIPMAN.

No. 2313. Decided April 9, 1912 (123 Pac. 89).

1. CRIMINAL LAW—APPEAL—HARMLES ERROR—MISNAMING ACCOMPLICE. Comp. Laws 1907, sec. 4975, provides that on an appeal the court must give judgment without regard to technical defects not affecting the substantial rights of the parties; and section 5080 provides that no error in the form prescribed by the Code as to any pleading or proceeding shall render the judgment invalid, unless it tended to defendant's prejudice. *Held*, that the fact that the information alleged that the name of the woman with whom accused was convicted of having committed fornication was "Verda" M., when her name was "Beatea." M., was not ground for reversing a conviction, where the identity of the woman named in the information with that of the woman with whom accused was convicted of having committed fornication was established. (Page 550.)

2. FORNICATION—PROSECUTION—SUFFICIENCY OF EVIDENCE. Evidence, in a prosecution for fornication, *held* to identify the woman named in the information as the one with whom the act was committed with a woman of another Christian name, with whom accused was shown to have committed the act. (Page 558.)

APPEAL from District Court, Fourth District; *Hon. J. E. Booth,* Judge.

Donald Chipman was accused and convicted of fornication. He appeals.

AFFIRMED.

*J. W. N. Whitecotton* for appellant.

*A. R. Barnes,* Attorney-General, and *E. V. Higgins* and *Geo. C. Buckle,* Assistant Attorneys-General, for the State.

FRICK, C. J.

Appellant was convicted of the crime of fornication, which, in this state, is a misdemeanor, and, by the judgment of the court, was sentenced to imprisonment in the county jail of Utah County for a period of seventy-five days, from which judgment he appeals.

There is really but one question presented by the assignment of errors. Appellant was charged with having committed the offense with one "Verda" Mathews. At the trial, the evidence on behalf of the state was to the effect that both appellant and Miss Mathews were unmarried; that some time after midnight they were discovered in a barber shop, while in the act of having sexual intercourse, by two of the city officers of American Fork City, and were by them immediately arrested and taken to the city hall; that the two officers were well acquainted with appellant, but had no acquaintance with and did not know the name of Miss Mathews; that at the city hall one of the officers, in the presence of appellant, asked Miss Mathews to give her name. From the bill of exceptions, it appears that upon this subject

the officer testified as follows: "I asked her her name, and she said, 'Mathews.' I said, 'What is your first name?' and she said, 'Verda.' And I went to the telephone and spelled out 'V-e-r-d-a.'" That he spelled out the name to Judge Hunter, the city justice of the peace, and that all this was done in the presence of appellant. The other officer testified to the same effect. It was for the foregoing reasons that the given or first name of Miss Mathews in the information was alleged to be Verda. At the trial, it developed that her given or first name was not Verda, but that it was Beatea. Miss Mathews, as a witness on behalf of appellant, denied that she told the officers that her name was Verda. Upon this subject, she testified as follows: "No; it (her name) was never given as Verda. It was given as Beatea in the first place, and they (the two officers) took it as Verda." In other words, according to the testimony of Miss Mathews, she gave her name as Beatea Mathews, while the officers understood her as giving it as Verda Mathews; and therefore her name was given as aforesaid, instead of Beatea, in the information filed against appellant. We remark that at the trial the evidence on behalf of appellant was clearly to the effect that Miss Mathews' given name was Beatea, and that she never was called or known by the name of Verda, either by her friends or relatives. It is, however, equally clear from the evidence that the two officers understood her to give her name as Verda, and not as Beatea, and that for that reason her name was given, as aforesaid, in the information. Under the foregoing circumstances, appellant's counsel insists that the court erred in refusing to charge the jury as requested by him. The refused requests are as follows:

"The court instructs you, gentlemen of the jury, that the information charges the defendant with the crime of fornication with one Verda Mathews; and, before you can find the defendant guilty in this case, you must find from the evidence, beyond all reasonable doubt, that the name of the young woman with whom he committed fornication, if you find he committed fornication with any one, was Verda Mathews, as charged in the information. If, therefore, you

find from the evidence that the defendant committed fornica-
tion with 'Beatea' Mathews, then your verdict must be, Not
guilty."

"I charge you, gentlemen of the jury, that in this case the
state has charged the defendant, by the information, of com-
mitting fornication with one Verda Mathews, and the evi-
dence shows that if he committed fornication with any one it
was 'Beatea' Mathews. I therefore charge you that there is
no evidence that the defendant committed fornication with
Verda Mathews, as charged in the information; and it is
your duty to find the defendant not guilty."

The court, in substance, charged the jury that, before they
could convict the appellant, they must find "that he had
sexual intercourse with an unmarried woman; that she was
known or called by the name of Verda Mathews. *It is not
essential that the name 'Verda' Mathews should be her true
name, if her identity is established and that she was recog-
nized by and called that name.*" Counsel excepted to that
part of the instruction given in italics, and now insists that
the court committed prejudicial error in giving it. We shall
refer to this instruction again, after we have considered ap-
pellant's requests to charge, which we have referred to.

Counsel contends that the name of the woman with whom
the offense was alleged to have been committed was material;
that Miss Mathews' true name was Beatea Mathews and not
Verda Mathews; that the latter name was given in the in-
formation, while at the trial it was made to appear that the
former was her true name; and, further, that she was not
known or called by the name of Verda Mathews, and there-
fore there is a fatal variance between the averments and the
proof upon a material matter, and hence it was prejudicial
error to refuse both of appellant's requests to charge. In this
connection, it is also earnestly contended that appellant was
charged with having committed the offense by having sexual
intercourse with Verda Mathews, while the proof shows that
if the offense was committed at all it was with Beatea
Mathews; hence the proof did not sustain a material aver-
ment of the information, and hence there is no escape from

the conclusion that, while appellant was charged with one offense, he was in fact convicted of another, and hence the judgment of conviction should not stand. Counsel cites three cases, namely, *State v. Dudley*, 7 Wis. 664, *Commonwealth v. Brown*, 2 Gray (Mass.), 358, and *People v. Christian*, 101 Cal. 471, 35 Pac. 1043, which, he contends, decide the contentions he makes in his favor. In view of the conclusion reached by us, we shall review the foregoing cases.

The case from Wisconsin was decided in 1858, and is based upon the following facts: The defendant was charged with having committed adultery with one Adaline Winders. Upon the trial, the proof, however, showed that the woman's name was Mary Adaline Winders, and not Adaline Winders. In passing upon the question, the Supreme Court of Wisconsin, speaking through Mr. Justice Cole, said:

"Nor is the court authorized in saying that proof showing that the defendant had committed adultery with Mary Adaline Winders is proof of adultery with Adaline Winders. Suppose the defendant, on being convicted on this indictment of adultery with Adaline Winders, should be indicted for adultery with Mary Adaline Winders, could he have pleaded in bar of the prosecution upon the latter indictment a conviction upon the former? It seems to us not. The court could not say that Mary Adaline Winders and Adaline Winders necessarily meant the same person."

The court therefore reversed the judgment. It does not appear from the statement of the case that there was any evidence whatever relating to the identity of the woman with whom the adultery was alleged to have been committed, except that her name was Mary Adaline Winders. This name did not correspond with the one charged, and, there being no further identification offered, the court was, perhaps, justified in setting aside the conviction upon the question of variance.

In the case of *Commonwealth v. Brown, supra,* decided in 1854, the defendant was informed against under a special statute, and the charge was that he had sold intoxicating liquors to one Mary Garland. Before the trial occurred, Mary Garland married one Morrison. Thus, at the time of

trial, her name was shown to be Mary Morrison. The Masssachusetts court had theretofore held that in such prosecutions the name of the person, if known, to whom the sale was made "must be truly set forth in the indictment." It was made to appear that the true name was known to the prosecutor; hence the court held that the conviction was not legal. In that case, as in the one from Wisconsin, the court passed on the question involved purely as a question of law. The later Massachusetts cases, as appears from the case of *Commonwealth v. Gould,* 158 Mass. 499, 33 N. E. 656, decided in 1892, no longer follow the rule laid down in the former case to which we have referred.

The next case is the one cited from California. In that case, the complaint was filed before a magistrate, charging the defendant with the crime of assault with a deadly weapon upon one George Magin. The defendant was duly held by the magistrate to answer to the district court. When the case reached the latter court, an information was there filed, charging the defendant with having committed the offense upon one George Magin. The defendant was duly held by the information, because he had not been committed upon the latter charge, and that he had not been given a preliminary hearing thereon. The trial court denied the motion to quash. Upon a trial, the defendant was convicted, and upon appeal the Supreme Court held, and properly so, that the trial court had erred in not quashing the information upon the grounds stated in the motion. No further comment is necessary upon that case, since it is clear that it is not in point here. We remark, however, that if a case in which the facts were like those in the California case, and where the defendant had interposed a motion to quash the information, were now before us, we should find no difficulty in following both the reasoning and the ruling of the California Supreme Court. The more modern decisions, however, do not treat the name of the person, where such name is essential for the purpose of identifying a particular person, as purely a question of law, as appears from the following, which we conceive to be well-considered, cases.

In the case of *Bennett v. State,* 84 Ark. 97, 104 S. W. 928, decided by the Supreme Court of Arkansas in 1907, it appears that the defendant was charged with the murder of one Mooney Thomas, and was convicted. The testimony at the trial was to the effect that the name of the deceased was Mooney Thomas and also Monte Thomas. The defendant requested the court to charge that, if the jury believed, beyond a reasonable doubt, that the name of the deceased was Monte Thomas, and not Mooney Thomas, it should acquit the defendant. The court refused to so charge, and the defendant assigned such refusal as error. The Supreme Court of Arkansas, in passing upon the alleged error, in the course of the opinion, said:

"Where the name of a party is necessary to a description of the offense, proof of a different person than the one named in the indictment makes a variance. Formerly there was a strict application of this rule, and even slight variance, if the names were not *idem sonans,* was held fatal. But the modern rule is that it is a question of identity; and where the identity of the party in the evidence with the one named in the indictment is established, or where inaccuracy is not misleading, the variance is not fatal."

In *Mead v. State,* 26 Ohio St. 505, the defendant, Mead, was charged with having murderd one Elisha Davidson. On the trial, the evidence showed that the name of the deceased was Elijah B. Davisson. The court, in effect, charged the jury that the misnomer was not material, provided they found, beyond a reasonable doubt, the person that was killed by the defendant was in fact Elijah Davisson. The case was appealed to the Supreme Court; and, in the course of the opinion, it is said that, under the Code of Ohio, the variance in the name would not be fatal or work an acquittal, unless such variance was found to be " 'material to the merits of the case or prejudicial to the defendant.' In order to prevent its working such acquittal, however, it must appear that the *person intended* to be described in the indictment is identical with the person described in the proof; the variance arising from a mere mistake in the *name.* . . . But it is for the jury to say whether the person intended to be described in the

indictment and the person described in the proof are one and the same person; in other words, whether the variance is a mere mistake in the *name*, or is a mistake as to the *person.*" The judgment was reversed, because the court had not submitted the question of identity of the person killed to the jury. It is sometimes contended that a contrary rule is laid down by the same court in *Goodlove v. State of Ohio*, 82 Ohio St. 371, 92 N. E. 491, 30 L. R. A. (N. S.) 134, 19 Ann. Cas. 893. A careful reading of the latter case will, however, demonstrate that that court has not departed from the rule laid down in the case we have just quoted from.

In *People v. Lake*, 110 N. Y. 61, 17 N. E. 146, 6 Am. St. Rep. 344, the defendant was charged with having committed a sexual offense with one "Georgiana Towne, commonly known as Georgiana Lake." The proof showed the name of the girl was Georgiana Jeanette, and that her name was abbreviated, and was "generally spoken of as Nettie Lake." The court, in disposing of the question of variance, says:

"Her name was Georgiana, and she was commonly called Lake. . . . Her true name in full was Georgiana Jeanette Lake, and it was no variance to describe her as Georgiana Lake; and the question of identity was put at rest by her presence."

In the cases of: *People v. Edwards*, 59 Cal. 359, and *People v. Main*, 114 Cal. 632, 46 Pac. 612, the modern rule is also adopted.

Our Criminal Code (Comp. Laws 1907, section 4975) reads as follows:

"After hearing an appeal, the court must give judgment without regard to technical errors or defects or exceptions which do not affect the substantial rights of the parties."

Section 5080 of the same Code provides:

"Neither a departure from the form or mode prescribed by this Code in respect to any pleading or proceeding, nor an error or mistake therein, shall render it invalid, unless it shall have actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right."

If, therefore, we apply the law as laid down in the foregoing section to the record in this case, what authority have we to interfere with the judgment? It is certainly established, beyond any question of a doubt, that the person with whom the appellant was charged with having committed fornication was identified as the one named in the information as Verda Mathews, although at the hearing it developed that her true name was Beatea Mathews. It is also established, beyond any possible doubt, that the mistake of calling Miss Mathews Verda, instead of Beatea, was merely a mistake in her name, and not a mistake of the person with whom the sexual offense was charged to have been committed. By what we have said, we do not mean that under the evidence the jury could not have found the defendant not guilty, had they believed him and Miss Mathews in their denial of the sexual act, rather than to have believed the officers. What we mean is that the jury could not have found that the appellant and Miss Mathews were not found in a compromising situation in a reclining barber chair in a barber shop after midnight on the night when the alleged offense was committed. They both admit at least their compromising situation, and all the evidence was to that effect. The only discrepancy between the admissions of both appellant and Miss Mathews and the officers is that the officers testified positively that the two were caught in the act of having sexual intercourse, while the appellant and Miss Mathews denied the intercourse. Moreover, Miss Mathews came into court and under oath admitted that she was the identical Miss Mathews who was with the appellant in the barber shop, and that she was in the reclining barber chair with him, and that her name in the information was given as Verda Mathews. It is true she denied that she gave her name as Verda; but in this connection it is somewhat significant that, although the appellant was present when the officers say she gave her name as Verda, and must have heard what was said between her and them, and although he testified in his own behalf with respect to what occurred in the barber shop and at the time of the arrest, he nevertheless does not deny that he

heard her give her name as Verda, nor that she did do so. The jury may have believed the officers that Miss Mathews gave her name as Verda, and that her doing so was the reason why her name was given in that form in the information. Furthermore, if the jury believed that she gave her name as Verda, it certainly was some evidence that such was her name, or that she had assumed that name when she was asked what her name was by the officers at the time she and the defendant were arrested.

In either event, the facts are conclusive in this case that the mistake was made in the name of Miss Mathews, and not in the person with whom appellant is convicted of having had sexual intercourse, as charged in the information. Can it be doubted that under the modern rule, if the appellant were again charged with the same offense, and he entered a plea of former conviction, that in establishing that plea he could not identify the person with whom the act was charged, as well as the transaction itself? Suppose A. were charged with having had sexual intercourse with the same person twice on the same day on separate and distinct occasions. Suppose, further, that he was convicted on the one and acquitted upon the other charge, but thereafter was charged with the same offense. Could he not plead former conviction upon the one charge and former acquittal of the other, and in establishing his pleas identify the transaction? If he could not, either plea would hardly afford him any protection, and would be a mere useless formality. Again, suppose A. is charged with having had sexual intercourse on the same day with two women of the same name. Here, again, let it be assumed that he was convicted on one charge and acquitted on the other. Could he not, in support of his pleas of former conviction and acquittal, identify both the transactions and the women to show of which transaction he had been convicted and which one acquitted? And would he not have to do this in order to sustain his pleas? If appellant were charged a second time for the offense for which he was convicted in this case, is there any possible doubt in the mind of any one that under this record he would not

succeed in showing that the sexual intercourse of which he was convicted was in fact had with Beatea Mathews, although in the information her name was given as Verda Mathews? Is it not a fact of universal acceptation that the name of a person or thing is merely a mark of identification? Does it not follow from this that a mistake in a name may occur, and yet the identity of the person or thing be established with absolute certainty? Is this not precisely what occurred in the case at bar? Are we authorized, therefore, to reverse a judgment, merely because a mistake was made in stating the given name in the information of the woman with whom the alleged sexual offense was committed, when the identity of such woman is established as being the one with whom the alleged offense was committed, and when it affirmatively appears that the accused could not have suffered any injury from the mistake? To reverse a judgment for such a reason, in our judgment, would be a travesty of justice, and contrary to both the letter and spirit of our Criminal Code, to which we have referred. It seems almost needless to add that where, as in this case, the name of a person is material the prosecuting officer should exercise great care in obtaining and stating the correct name of such person, and in case such person is known by different names to so state, or in case the name is not known to state such fact, so that the proof may correspond with the allegations of the complaint.

What we have said also disposes of the contention that the court erred in giving that portion of the charge to which we have already referred. In view of all the circumstances, the charge as given by the court could in no possible way have prejudiced the rights of the defendant.

The judgment is affirmed.

McCARTY, J., concurs.

STRAUP, J.

I concur in the result. I think, however, in cases such as this, where the person described in the information and by the evidence is the same person, but described differently, or

where a person is known by two names, described by one in the information and by the other by the evidence, the better practice is to permit the information to be amended by alleging the true name, or where there are aliases to so allege the fact. After it was shown by the evidence that Beatea Mathews referred to by the evidence was the same person as Verda Mathews referred to in the information, and that her true name was Beatea Mathews, and that she was described as Verda Mathews in the information because that was the name given by her to the officers, the state asked leave to amend the information by inserting the name of Beatea Mathews. The defendant objected to this. The court ruled with the defendant on two grounds: (1) That the motion ought to have been made before the trial commenced; and (2) that the subject-matter of the amendment was immaterial. Then the defendant moved for a discharge on the ground of a variance—the information showing Verda and the proof Beatea Mathews. This motion the court also denied. I think the court ought to have granted the motion of the state, and denied, as it did, the motion of the defendant. Such an amendment, in my opinion, is not forbidden by section 4694, Compiled Laws 1907, relating to amendments after plea.