Submitted on brief January 17, affirmed January 30, 1917.

## RASMUSSEN *v.* WINTERS.

(162 Pac. 849.)

**Adverse Possession—Pleading—Complaint.**

1. In a suit involving title to land, a complaint alleging that the plaintiffs have had possession of all the land under color of right and by hostile adverse possession, and that they have been in actual occupancy of all the land, that they have held the land in open, plain and notorious possession against the entire world, and that they have been in continuous possession for more than 11 years, constituted an assertion of title by prescription.

[As to what amounts to color of title sufficient to sustain adverse possession, see notes in 14 Am. Dec. 580; 88 Am. St. Rep. 701.]

**Appeal and Error—Change of Theory on Appeal.**

2. In a suit involving title to land, where the complaint asserted title by prescription, and the case was tried on that theory, plaintiffs cannot on appeal try the case on the basis of an action to determine a disputed boundary.

**Boundaries—Evidence—Sufficiency.**

3. In a suit involving title to lands, evidence based on map on which surveyor had noted that the lines do not purport to be established in accordance with the legal subdivisions of quarter sections *held* insufficient to establish the boundary line as claimed by plaintiffs.

From Clatsop: JAMES A. EAKIN, Judge.

In Banc.  Statement by MR. JUSTICE BURNETT.

The plaintiffs are the children and widow of Hans Rasmussen, who died intestate August 16, 1906, and who, they say, purchased from one Swan on March 16, 1906, the northwest quarter of the northwest quarter of section 9, township 7 north, range 9 west of the Willamette Meridian, in Clatsop County, Oregon.

They aver that said grantor for ten years prior thereto was the owner in fee and in the adverse possession against all the world of the whole of the property described in the complaint and at issue, and deraign their title by descent from Hans Rasmussen. They state, in substance, that when the surveys of lands in that township were made the surveyor set a certain stake as the northwest corner of section 9. They claim to have had a civil engineer make a survey of the lands which they and their grantor actually occupied for more than ten years prior to the commencement of the suit. The complaint then sets out the following allegation:

"That for more than 10 years prior to the commencement of this suit plaintiffs herein and their predecessors in interest have owned and been in continuous possession and actual occupancy of all of the lands within said northwest quarter of the northwest quarter of said section as indicated on said attached map by said Bennett survey under color of right and under muniments of title as recorded in the office of the county clerk of said Clatsop County, and as shown by said records in the probate of the estate of said Hans Rasmussen, deceased, always save and except that the exact location of the south boundary of said legal subdivision had not been definitely determined by any survey or measurement made by or at the instance of plaintiffs herein or any of their immediate predecessors in interest, other than by said Bennett survey, and that during a long period there had been some doubt as to the precise and mathematically exact location of said south boundary line, but that for more than 11 years prior to the commencement of this suit, plaintiffs herein and their predecessors in interest have continuously held by actual possession and claimed all of the lands by open, plain and notorious adverse possession against the entire world as far south as is shown by the south boundary line thereof on the attachable maps, which south boundary line is 1,320 feet

southerly of said original stake, and on the east have
for the same length of time, and by the same hostile
adverse possession held and claimed as their own all
of the lands as far east as is indicated by the dotted
lines marked as 'location of old fence' between said
Bennett survey boundary on the south and said slough
on the north, and that plaintiffs and their immediate
predecessors in interest for more than 11 years last
past, being in ignorance of the true and mathematically
precise boundary lines on the south and east of said
subdivision, claimed and held as indicated irrespective
of where said true boundary lines might be or might
ultimately be ascertained to be.''

They aver that the Bennett survey is made part of
the complaint ''for the purpose of showing and de-
scribing the lands held and claimed by plaintiffs under
color of title, and for the further purpose of aiding and
perfecting the description of lands, if any there be,
outside of the actual boundaries of said northwest
quarter of the northwest quarter of section 9 that
plaintiffs claim title to by prescription.''

As to the defendants, the allegation of the complaint
is as follows:

''That said Chris. Winters and [Jane Doe] Winters,
his wife, are now the record owners of lands that lie
to the south and the east of said northwest quarter of
the northwest quarter of said section 9, and that said
Chris. Winters and his said wife claim an interest or
estate in plaintiffs' said lands, the precise nature and
extent of which to plaintiffs is unknown.''

The prayer is for ''a decree determining and adjudi-
cating that all of said lands as claimed by plaintiffs
are owned in fee by them, subject to dower estate in
the plaintiff Anni Rasmussen, and that they are enti-
tled to the possession thereof, for restraining order
commanding and prohibiting defendants from inter-
fering with such ownership and possession, and for

such other relief as to the court may seem just and meet, together with their costs and disbursements herein.''

The answer denies all the allegations of the amended complaint except such as are expressly admitted. Affirmatively the defendants state, in substance, that at the commencement of the suit, and for several years before that, they were the owners in fee simple and in possession of the southwest quarter of the northwest quarter and the northeast quarter of the northwest quarter of said section 9, which lands lie south and east of the northwest quarter of the northwest quarter of said section, and that they have never claimed or asserted any right, title or interest in or to the last-named subdivision.

The reply denies the allegations of the answer, except as otherwise stated in the complaint. After a hearing the Circuit Court dismissed the suit, and the plaintiffs appeal. Pending this the plaintiffs substituted new counsel.

Submitted on brief under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi).

AFFIRMED.

For appellants there was a brief over the name of *Messrs. Norblad & Hesse.*

For respondents there was a brief prepared by *Messrs. Anderson & Erickson.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The position of the plaintiffs in this court is that, although the suit was tried as one to quiet title, yet the complaint did not state enough to give the Circuit Court jurisdiction thus to determine the issue, and that

now they are entitled to urge on appeal that it is really a proceeding to determine a disputed boundary; while the defendants contend that the complaint is sufficient as for a suit to quiet title, and that, having been tried as such by the plaintiffs, they cannot now change front or mend their hold, but must be bound by the same theory in this court.

1. As said in *Talbot* v. *Cook,* 57 Or. 535 (112 Pac. 709), quoting from 1 Am. & Eng. Enc. Law (2 ed.), 795:

"There are five essential elements necessary to constitute an effective adverse possession: First, the possession must be hostile and under a claim of right; second, it must be actual; third, it must be open and notorious; fourth, it must be exclusive; and, fifth, it must be continuous. If any of these constituents is wanting, the possession will not affect a bar of the legal title."

See, also, *Jasperson* v. *Scharinkow,* 150 Fed. 571 (80 C. C. A. 373, 15 L. R. A. (N. S.) 1178, and notes); *McNear* v. *Guistin,* 50 Or. 377 (92 Pac. 1075).

We apply this canon to the first-quoted excerpt from the amended complaint. We find the plaintiffs state that they have had possession of all the lands indicated by the Bennett survey under "color of right" and by "hostile adverse possession." This satisfies the first element of the rule. They also say they have been in "actual occupancy of all of the lands." This meets the second requirement. They assert that they have held the land "by open, plain and notorious adverse possession" covering the third ingredient, and "against the entire world" which amounts to the exclusive possession under the fourth head, and that they have been in "continuous possession" complying with the last condition of the test. The prayer already noted indicates that it is a suit to quiet title; and, lastly,

at the close of the direct examination of Harold Rasmussen, the first witness on behalf of the plaintiffs, their counsel said to the court:

"I want to freely admit these questions of mine were intended to be merely incidental. I certainly do not want to prove a boundary line. This is not a boundary line case in any way or purpose."

The allegations of the bill plainly show that, in part at least, the plaintiffs are claiming title by prescription not only to the realty actually included in the government survey of the legal subdivision they mention, but also to outside lands which were in their occupancy. The only grievance they state against the defendants is that the latter claim some interest in the holdings of the plaintiffs which they sought to have declared.

2. We hold, therefore, that not only was there sufficient in the complaint to constitute an assertion of title by prescription, but also that the case was tried on that theory. This being true, the plaintiffs cannot now make a different attack and try the case in this court on some other basis: *Wyatt* v. *Henderson,* 31 Or. 48 (48 Pac. 790); *Anderson* v. *Portland Flouring Mills Co.,* 37 Or. 483 (60 Pac. 839, 82 Am. St. Rep. 771, 50 L. R. A. 235); *Mattis* v. *Hosmer,* 37 Or. 523 (62 Pac. 17, 632); *Larch Mountain Investment Co.* v. *Garbade,* 41 Or. 123 (68 Pac. 6); *State* v. *Davis,* 42 Or. 34 (71 Pac. 68, 72 Pac. 317); *Durning* v. *Walz,* 42 Or. 109 (71 Pac. 662); *Ward* v. *Queen City Fire Ins. Co.,* 69 Or. 347 (138 Pac. 1067).

3. Moreover, if we should consider this as a case to establish a disputed boundary, the testimony of the plaintiffs is not sufficient to establish the line as they claim it should be, for, as the surveyor noted on the map attached to the complaint and likewise offered in evidence:

"The lines shown on this plat do not purport to be established in accordance with the legal subdivisions of quarter-sections."

He stated as a witness, in substance, that in the vicinity of the northwest corner of section 9 there were two stakes some distance apart, one north of the other, and that at the instance of the plaintiff, Harold Rasmussen, he began the survey at the south stake, when there was quite as much evidence of the other being at the true corner. As their contention is based expressly on this survey it is not sufficient to prove the correctness of the line contended for by the plaintiffs.

The decree of the Circuit Court is affirmed.

Affirmed.