*713 OPINION OF THE COURT
David Demarest, J.
This lawsuit alleges causes of action for breach of contract and negligence arising out of defendant’s purported failure to discover and disclose a notice of attachment on certain real property which was a matter of public record when defendant undertook to conduct a title search for plaintiff. Plaintiff moves and defendant cross-moves for summary judgment. The court has considered plaintiff’s submissions and renders the following decision and order.
In March of 1994 plaintiff, as mortgagee, accepted a collateral security mortgage of property from Duplisses Trading Co., Inc., as mortgagor, securing the principal amount of $77,000. In February 1995 the mortgagor fell into default and offered a deed in lieu of foreclosure. To accomplish this task defendant was asked by plaintiff’s then-attorney, Edward La Yarn way, Esq., to "bring abstract to date and if there are no impediments against Duplisses Trading Company kindly record.” (LaVarnway letter, Feb. 21, 1995; emphasis added.) In reply, defendant updated the abstract of title providing a certification that:
"Etna Abstract Corp., a corporation duly organized under the laws of the State of New York * * * does hereby certify that it has examined the records in the Franklin County Clerk’s Office by means of the alphabetical indices therein contained against the following named persons for the period of time set forth opposite their respective names, to wit:
"Duplisses Trading From: November 2, 1993
"Company, Inc. To: February 27, 1995
"and find no deed, contract, lease, will, mortgage, assignment of mortgage, mechanic’s lien, lis pendens, judgment, federal tax lien, order, financing statement, criminal surety bond or building and loan agreement which appears to affect the premises described in
"Set Out No. 20
"except as hereinafter set forth.”
Relying on the certified abstract, plaintiff accepted title to the property, recording the deed on February 27, 1995.
Thereafter, in or around June 1995, and upon negotiating sale of the property for $175,000, the prospective purchaser caused additional title work to be performed. In the course of *714 this activity, plaintiff came to learn the property was subject to an order of attachment in an action by Frederick G. Dupee against Dewey P. Duplissey and Duplissey’s Trading Company, Inc., recorded on July 12, 1994 in the Franklin County Clerk’s Office, constituting a preexisting lien or encumbrance upon title to the property in the amount of $85,000, plus interest.
It is plaintiffs contention that defendant’s failure to discover the notice of attachment against Duplissey’s Trading Company, Inc., constituted a per se breach of contract and negligence. To this extent plaintiff argues the unique and uncommon nature of the name — "Duplissey’s” or "Duplisses” — should have alerted defendant. Defendant argues it fulfilled its obligation to search the alphabetical indices for "Duplisses Trading Co., Inc.” and may not be held liable for failure to discover and note any encumbrances respecting "Duplissey’s Trading Co., Inc.” as the two names are entirely different and distinct from one another; it was instructed to search "Duplisses”; and use of alphabetical indices (as disclosed to plaintiff in defendant’s certification) to search "Duplisses” would not have revealed encumbrances against "Duplissey’s”.
Plaintiff has tendered affidavits of area title searchers who undertook the same search and discovered the notice of attachment despite the spelling variation. Both parties tender affidavits of local title searchers summarizing their search methods. Plaintiffs experts argue that spelling variations are to be noted in an abstract of title and that the spelling variation in the case at bar was inconsequential and should have been detected. Moreover, plaintiffs counsel provides a copy of the Standards for Title Examination of the New York State Bar Association which states, in pertinent part:
"7. Corporate Names — Minor Variations.
"Objections should not be made to a minor variation between the name of a corporation appearing in the chain of title and its correct name if there is no other corporate name filed with the Secretary of State with which the name in the chain of title can be confused.”
In this vein, plaintiff alleges, on information and belief, there is no other corporate name with which Duplisses can be confused. Defendant’s expert notes that to "search against all possibilities of name spelling would be a task beyond what an ordinary abstractor could accomplish and be paid for * * * For example, the name LaTray is also LeTray, LaTrey, Latreill and Latreille * * * I know of no law or rule of abstracting in this State which requires an abstractor to go beyond his or her *715 specific request and order. The fact that a name will be close in spelling does not require the abstractor [to] follow it out” (Walsh affidavit, Sept. 22, 1997, para 3).
Dismissal of plaintiffs negligence cause of action is proper in light of plaintiffs failure to establish a violation of a legal duty independent of the contract. (See, Murray-Gardner Mgt. v Iroquois Gas Transmission Sys., 229 AD2d 852, 854 [3d Dept 1996], citing Clark-Fitzpatrick, Inc. v Long Is. R. R. Co., 70 NY2d 382 [1987].) A simple breach of contract may not be transformed into a tort unless a legal duty independent of the contract itself has been violated. (Fleet Bank v Douglas-Guardian Warehouse Corp., 229 AD2d 962 [4th Dept 1996]; T.A.T. Prop. v Concrete Sealants [U.S.], 184 AD2d 689 [2d Dept 1992].) Lack of a separate relationship between plaintiff and defendant distinct from and independent of contract precludes plaintiffs claim against defendant for negligence. Neither does a conventional business relationship create a fiduciary relationship in the absence of additional factors. (See generally, RKB Enters. v Ernst & Young, 182 AD2d 971 [3d Dept 1992].)
Plaintiff and defendant entered into a simple contractual business relationship for abstracting services. "[I]f a negligent search causes an insurer to represent that title is when it is not, its liability is in contract, not tort, since the effect of such negligence is not to create a risk of a defect in title but simply to leave undiscovered a risk that already exists.” (Cruz v Commonwealth Land Tit. Ins. Co., 157 AD2d 333, 337 [1st Dept 1990] [emphasis added].)
Plaintiff cites Cruz for support of its position that negligence remedies are available in addition to contract remedies. In Cruz, however, it was not an undiscovered lien that gave rise to plaintiffs lawsuit, but defendant’s failure to promptly record the deed, thereby permitting recordation of an intervening lien. The First Department held that "the damages plaintiff allegedly sustained as a consequence of defendant’s negligence in recording the deed were not within the contemplation of the [title insurance] policy (see, Clark-Fitzpatrick, Inc. v Long Is. R. R. Co., supra, at 390).” (Cruz v Commonwealth Land Tit. Ins. Co., at 337.) There being no other, additional allegations other than plaintiff’s claim defendant failed to discover a preexisting lien on the property, plaintiff may not properly maintain a cause of action against the defendant for negligence.
Plaintiff is left with a breach of contract cause of action. Surprisingly, there is no New York precedent addressing an abstractor’s duty to search beyond the express terms stated in *716 its title certificate. To the extent defendant relies on the case of Turk v Benson (30 ND 200, 152 NW 354 [ND 1915]), the court is not persuaded its factual scenario is sufficiently similar to provide insight into the matter at hand. Specifically, Turk involved whether a judgment docket containing the name William J. Rideout was sufficiently similar to the name William G. Rideout as to have required the abstractor to show the judgment. In that case, a judgment, as a debt of William G. Rideout, was erroneously docketed against a nonexistent William J. Rideout, forcing the plaintiff (real estate purchaser) to pay the judgment. The court pointed out: "Judgments stand in a class by themselves because there is no extraneous data from which the examiner can determine the identity of the person. In this it differs from chattel mortgages where the searcher always has the description of the property covered thereby as a guide to aid him in determining the identity of the person executing the same. For these reasons we limit application of this rule to judgments alone, leaving other questions to be determined when reached. In the case at bar there is nothing to indicate that William J. was the same and identical person as William G., the middle initials being different. Had one or the other of the initials been entirely omitted, and either the grantee of the deed or the judgment debtor been shown as simply William Rideout, a different state of facts would exist, and possibly it would be the duty of the abstractor to show the judgment. Upon this, however, we express no opinion.” (Turk v Benson, 30 ND, at 204, 152 NW, at 355 [emphasis added].) These facts are different from ours since, unlike a recorded judgment, a property description would have accompanied the notice of attachment; and, assuming "Duplissey’s” (as opposed to "Duplisses”) was discovered by the abstractor in the docket, a comparison of the property descriptions would have resolved all doubt. Similarly unpersuasive is defendant’s citation of Berkowitz v Dam (122 Misc 143, affd 212 App Div 836 [2d Dept 1925]). In Berkowitz the court held that the judgment docket reflecting a judgment against Max Sorcher, not discovered by the searchers, was ineffective as against Max Soicher, the name against which the dockets were searched. In so holding the court stated (at 144): "The creditor must see that the docket of a judgment is in the correct name of the debtor. If it is not it is not notice to subsequent purchasers.”
The court is constrained to deny both parties’ summary judgment motions on the basis that questions of fact preclude summary disposition. It is clear, based on the parties’ expert af *717 fidavits tendered, that a fact finder must decide whether defendant breached its duty to plaintiff in conducting the title search. The jury will be in a position to assess and weigh the credibility of the parties and witnesses.